**Entered on Docket
September 07, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: September 05, 2007**



_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>QMECT, INC., etc.,<br><br>    Debtor-in-Possession.<br>_____/ | No. 04-41044 T<br>Chapter 11 |
| In re<br><br>FRED AND LINDA KOELLING,<br><br>    Debtors-in-Possession.<br>_____/ | No. 04-46443 T<br>Chapter 11 |
| QMECT, INC., etc.,<br><br>    Plaintiff,<br><br> vs.<br><br>BURLINGAME CAPITAL PARTNERS II,<br>L.P., etc. et al.,<br><br>    Defendants.<br>_____/ | A.P. No. 04-4190 AT<br>(Consolidated with<br> A.P. Nos. 04-4365 AT<br> and 04-4366 AT) |
| AND RELATED ADVERSARY PROCEEDINGS<br>_____/ | |

**MEMORANDUM OF DECISION RE AMENDED MOTION FOR
POST-PETITION ATTORNEYS' FEES AND COSTS**

On May 17, 2007, the Court issued a Memorandum, stating its conclusion that Defendant Burlingame Capital Partners II, L.P. ("Burlingame") may include its contractual post-petition attorneys' fees and costs in its general, unsecured proof of claim against the principals of Qmect, Inc. ("Qmect"): i.e., Debtors Fred and Linda Koelling (the "Koellings"). The Court gave Burlingame 60 days to file a supplemental motion (the "Supplemental Motion"), providing more detail concerning the work done and costs incurred for which it sought payment. The Koellings were given 30 days to file an opposition (the "Opposition"), and Burlingame was given 15 days to file a reply (the "Reply"). Briefing is now complete. Having reviewed the papers filed, the Court finds that Burlingame is entitled to include attorneys' fees and costs in its general, unsecured claim against the Koellings' bankruptcy estate as set forth below.[1]

**DISCUSSION**

**A. BURLINGAME'S SUPPLEMENTAL MOTION**

Based on In re Fobian, 951 F.2d 1149 (9th Cir. 1991)--the controlling case in the Circuit at that time--the Court previously held that Burlingame could only include in its pre-petition claim its

---

[1] Burlingame is also entitled to include its post-petition attorneys' fees in its unsecured claim against the Qmect bankruptcy estate. However, Burlingame has previously foreclosed on virtually all of the assets in that estate. Consequently, as a practical matter, Burlingame is only asserting its claim for post-petition fees and costs against the Koellings.

2

post-petition fees and costs for work done litigating nonbankruptcy specific issues. Based on this ruling, Burlingame submitted an amended fee application, seeking $489,154.28 in fees and $44,524.06 in costs. The work done was segregated into the following tasks and the time and fees as to each calculated as follows:

| **Project** | **Hours** | **Fees** |
|---|---|---|
| Discovery | 420.5 | $140,857.50 |
| Motion Practice-Dispositive Motions | 613.4 | 178,512.50 |
| Motion Practice - Other | 432.6 | 150,801.00 |
| Trial Preparation | 378.3 | 117,282.42 |
| Trial and Continued Trial Preparation During Trial | 683.4 | 238,773.48 |
| Post-Trial | 74.5 | 28,077.50 |
| Legal and Fact Research Regarding Claims and Causes of Action | 12.0 | 3,861.00 |
| Total: | 2,614.7 | $858,165.40 |

The total was then reduced by 43 percent based on an allocation of the fees incurred between Burlingame and Electrochem Funding LLC ("Funding"), Burlingame's affiliate, based on the relative amounts of their debt.[2] This resulted in a reduced fee request of $489,154.28 for nonbankruptcy specific work. The request was supported by a brief narrative description of the work performed in each project and

---

[2] The Court previously found that the Funding's claim against the Koellings had been released.

by redacted time sheets. Unredacted time sheets were submitted for in camera review.

Before the Court could rule on the reasonableness of these fees and costs, the United States Supreme Court overruled <u>Fobian</u>. In <u>Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.</u>, 127 S. Ct. 1199 (2007), the Supreme Court held that, in allowing an unsecured creditor its post-petition fees and costs based on a contractual attorneys' fee clause, there was no basis for distinguishing between work done on bankruptcy specific issues as opposed to nonbankruptcy specific issues. It left open the question of whether an unsecured creditor was entitled to include any post-petition fees or costs in its claim.

This issue was then presented to the Court in this case. After briefing and argument, the Court held that an unsecured creditor could include such fees and costs in its claim. As a result, Burlingame filed a supplemental motion (the "Supplemental Motion"), detailing the fees and costs incurred litigating bankruptcy specific issues. In the Supplemental Motion, with respect to such issues, Burlingame seeks $603,598.79 in fees and $83,671.42 in costs incurred litigating bankruptcy specific issues. The work done on bankruptcy specific issues is divided into eleven categories with the time spent and fees incurred specified as to each as follows:

| **Project** | **Hours** | **Fees** |
| --- | --- | --- |
| Motion to Dismiss | 200.5 | $ 66,952.00 |
| Miscellaneous Bankruptcy Matters | 251.4 | 90,865.50 |

4

| | | |
|---|---:|---:|
| Valuation | 32.2 | 12,415.00 |
| Cash Collateral | 510.9 | 197,959.50 |
| Motion for Relief from Stay/Appointment of a Trustee | 542.7 | 187,356.25 |
| Final Motion for Relief From Stay | 973.0 | 360,179.00 |
| Miscellaneous Bankruptcy Research | 53.6 | 23,751.00 |
| FRBP 2004 Examination Motions | 51.2 | 18,800.50 |
| Attorneys' Fees | 145.4 | 50,496.50 |
| Settlement Discussions | 38.0 | 16,627.50 |
| Appeal from Final Relief from Stay Order | 100.0 | 33,542.50 |
| Totals | 2,898.9 | $1,058,945.25 |

In the Supplemental Memorandum, the work done in each category is described briefly. As with the work done on nonbankruptcy specific matters, this amount is reduced by 43 percent, resulting in an additional fee request of $603,598.79. The Supplemental Memorandum is supported by the Declaration of Marlene M. Moffitt (the "Moffitt Declaration"), to which is attached, segregated by category, a line item description of the services provided, the person providing them, the time spent, the hourly rate of the professional performing the service, and the fees incurred. These time sheets are unredacted.

In the Supplemental Memorandum, costs are segregated into three categories: (1) $79,163.32 specially identifiable with bankruptcy related issues, (2) $41,821.07 not specifically identifiable with

5

bankruptcy related issues from invoices issued by the law firm of Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins"), and (3) $25,807.58 not specifically identifiable with bankruptcy related issues from invoices issued by the law firm of Pachulski Stang Ziehl Young Jones & Weintraub LLP (the "Pachulski Firm") for a total of $146,791.97. Again, this amount is reduced by 43 percent, resulting in a cost request of $83,671.42. Further detail is provided with respect to these costs in Exhibits 12, 13, and 14 to the Moffitt Declaration.

Burlingame contends that the substantial sums sought are reasonable and were necessary given the "no holds barred" nature of the Debtor's and Creditors' Committee's litigation strategy. It notes that it prevailed on all of the significant issues during the case. In the end, it was granted relief from the automatic stay and foreclosed on virtually all of Qmect's assets.

**B. KOELLINGS' OPPOSITION**

In their opposition to the Supplemental Motion, the Koellings incorporate by reference their objections to Burlingame's original fee request. There were four categories of fees and costs which they contended were not reasonable: (1) $72,043.80 in fees incurred in connection with the adversary proceeding initiated by the Official Creditors' Committee (the "Committee"), (2) $30,401.50 in fees supported only by vague time entries, (3) $26,219.25 in fees and $18,900 in costs incurred in connection with Burlingame's failed attempt to call Steven Cowan ("Cowan") as an expert witness, and (4) $16,642.50 in fees described as "unnecessary." The Koellings also

6

raise three objections to the Supplemental Motion: (5) to the $66,952 in fees and costs incurred prosecuting an unsuccessful motion to dismiss the bankruptcy case, (6) to the $50,496.50 incurred litigating Burlingame's right to its post-petition fees and costs and (7) to the $232,631.29 in fees and costs incurred by the Pachulski Firm for which the Pachulski Firm is suing them for payment. Each of these objections is addressed below.

**(1) Committee's Adversary Proceeding**

Burlingame seeks $72,043.80 in fees incurred in connection with the adversary proceeding initiated by the Official Creditors' Committee (the "Committee"), challenging the validity of Burlingame's and Funding's security interests under state law.[3] The Koellings contend that Burlingame is not entitled to these attorneys' fees because the litigation was with the Committee, not with Qmect. Burlinagme disagrees. It asserts that it is entitled to recover these fees because the Committee undertook that litigation on behalf of Qmect and the estate. The Court agrees with Burlingame. Any other conclusion would permit a chapter 11 debtor to circumvent an attorneys' fees clause permitting the Creditors' Committee to pursue litigation on the contract containing the clause. Thus, the Koellings' objection to these fees will be overruled, and the fees will be allowed.

---

[3] Burlingame concedes that, upon review of its time sheets, it noted one item that should not have been included in the fee request. Thus, it agrees that its fees in this category should be reduced $187.50 to $71,856.30.

7

**(2) Vague Time Entries**

The Koellings object to $30,401.50 in fees which they contend are supported only by vague time entries. Burlingame disputes that the time entries objected to are vague. It contends that the time entries in question should be read in the context of other time entries. Moreover, Burlingame notes that the Court stated in the Memorandum of Decision, denying its original motion without prejudice, that its fee request need not comply with the rigorous format requirements of the Court's Fee Guidelines for court appointed professionals.

The Court has reviewed the time entries objected to by the Koellings as too vague. With only a few exceptions, the Court finds them sufficiently specific to pass muster even under the stringent standards set by the Court's Fee Guidelines. The exceptions are sufficiently clear, in context, to support the Court's finding of reasonableness. This objection by the Koellings will also be overruled, and the fees will be allowed.

**(3) Expert Witness Fees**

The Koellings object to $26,219.25 in fees and $18,900 in costs incurred in connection with Burlingame's failed attempt to call Steven Cowan ("Cowan") as an expert witness.[4] Burlingame argues that it is entitled to these fees and costs because they were reasonably incurred even though they ultimately did not benefit the litigation.

---

[4] The Koellings filed a motion in limine shortly before trial, seeking to exclude Cowan on the ground that his proposed expert testimony was inadmissible. The Court granted the motion.

8

In support of this contention, it cites Thayer v. Wells Fargo Bank, 92 Cal. App. 4th 819, 839 (2001). It also notes that several of the time entries included in the relevant exhibit do not in fact relate to this task.

The Court agrees with the Thayer court that fees and costs should not disallowed simply because, in hindsight, they did not produce results in a case. The test of reasonableness is applied in foresight, not in hindsight. However, the Court concludes that the fees and costs in this category were not reasonably incurred, even as so viewed.

The Koellings filed a motion in limine prior to trial to exclude Cowan's testimony. In opposition to the motion, Burlingame indicated that it intended to call Cowan to testify on the meaning of certain contractual documents and on the custom and practice in the lending industry in connection with the types of transactions involved here. The Court found the proposed testimony unnecessary. The Court now finds that the proposed testimony was so clearly unnecessary that incurring these fees and costs was unreasonable. Therefore, this objection will be sustained, and the fees and costs in question will be disallowed.

**(4) Unnecessary Fees**

Finally, the Koellings argue that $16,642.50 of the fees sought by Burlingame were unnecessary and should be denied. These fees relate to the testimony of David Ferree ("Feree"), a vice president of Comerica Bank ("Comerica"). Comerica was the original holder of Qmect's senior secured debt which was acquired by Burlingame shortly

9

before the chapter 11 case was filed and then assigned to Funding. Feree's testimony was offered by Burlingame to establish the basis for Funding's claim and to authenticate documents in Comerica's files relating to Qmect's and the Koellings' banking relationship with Comerica.

As the record reflects, Feree had virtually no usefulness as a witness. It was disclosed at trial (and should have been discovered before trial by Burlingame) that Feree became responsible for the Qmect/Koelling account only shortly before the debt was acquired by Burlingame. At trial, therefore, he had virtually no usefulness as a percipient witness. Moreover, as detailed in the Court's memorandum, Feree was unable to authenticate the relevant account records, because he had no knowledge of the manner in which the records were prepared.[5] Again, this flaw in his capacity to testify should have been discovered by Burlingame prior to trial. The Court concludes that the fees incurred litigating this issue are unreasonable and should be disallowed.

**(5) Motion to Dismiss**

The Koellings object to the award of $66,952 in fees incurred in connection with the motion to dismiss the bankruptcy case. The motion was filed shortly after the case was filed. The Koellings contend that it was summarily dismissed. They object to the award of

---

[5] In the end, the Court admitted the business records in question under the general rule permitting documents whose authenticity cannot be reasonably questioned. However, the work performed by Burlingame, and Ferree's presence as a witness did not lead to this result.

10

these fees and costs incurred for a matter on which Burlingame failed to prevail.

In its reply, Burlingame argues that its fees and costs incurred in connection with its motion to dismiss should not be disallowed simply because the motion was not successful. It notes that a determination of the reasonableness of fees must be based on the totality of circumstances as determined at the time the fees are incurred, not with the benefit of 20/20 hindsight. Fees may be reasonable even if the litigant does not prevail on the particular issue or theory. Moreover, Burlingame asserts, the reasonableness of fees should not be based on the success or failure of "one battle along the road to victory." Burlingame was clearly the prevailing party overall in connection with the bankruptcy case and this adversary proceeding. Thus, Burlingame contends, the Koellings cannot question the reasonableness of any of the fees incurred in connection with a particular motion simply because the motion was unsuccessful.

The Court agrees with Burlingame that the reasonableness of fees and costs must be judged based on the totality of circumstances as they appeared when the fees and costs were incurred. It also agrees that fees and costs may have been reasonably incurred even though the motion (or opposition) for which they were incurred was not successful. However, the Court disagrees that the ultimate success of a litigant in a proceeding ensures that all the fees and costs incurred along the way were reasonable.

11

The Court has reviewed the motion to dismiss and related pleadings and docket entries. Having done so, the Court concludes that the fees were reasonably incurred. Qmect's chapter 11 petition was filed on February 27, 2004. Burlingame's motion to dismiss the case or, in the alternative, for relief from the automatic stay was filed on March 5, 2004, only six days later. Contrary to the Koellings' contention that the motion was summarily denied, the Court held a three day evidentiary hearing on the motion: i.e., on March 26 and April 1 and 2, 2004.

The motion was based, among other grounds, on the debtor's having improperly handled hazardous waste, having failed to make contributions to employees' 401(k) plans, and having failed to maintain critical insurance. Although the motion was ultimately denied, the continued protection of the automatic stay was conditioned on the appointment of an examiner to ensure Qmect's future compliance with requirements for the handling of its hazardous waste. Under these circumstances, the Court is unable to conclude that it was unreasonable for Burlingame to seek dismissal or stay relief so early in the case. Given the nature of Qmect's opposition to the motion, the fees incurred were also reasonable in amount.

**(6) Fees Incurred Litigating Right to Post-Petition Fees**

The Koellings contend that Burlingame is requesting that they pay $50,496.50 in fees and costs incurred litigating its rights to includes post-petition fees and costs in its unsecured claim. The Koellings concede that the United States Supreme Court's ruling on this issue required some of these fees and costs to be incurred.

12

However, they contend that some of the work done by counsel for Burlingame, giving rise to these fees and costs, was necessitated by Burlingame's failure to file a proper fee application in the first place.

In its reply, Burlingame argues that it is well established that the fees and costs incurred seeking an award of attorneys' fees and costs are recoverable. It notes that the amount of fees and costs that Burlingame seeks in this category is only $28,783, not $50,496.50, after reducing the total incurred by 43 percent. It also notes that this represents only 2.4% of the total fees and costs requested.

Burlingame disputes that its original fee application was deficient. It notes that the Court had previously stated that it was not required to comply with the same standards applicable to fee applicants pursuant to 11 U.S.C. § 330. Moreover, it contends that, if it had prepared its original fee application in the format it was ultimately required to utilize, it would have incurred the same amount of fees and costs at that stage of the proceeding.

The Court concludes that the Koellings' opposition on this ground is without merit and should be overruled. Most of the fees and costs were reasonably incurred, litigating difficult and novel issues. While the Court found Burlingame's original fee application insufficiently specific, particularly given the amounts in question, the standards for fee applications by counsel not covered by § 330 are not clearly defined. Thus, it was not unreasonable for

13

Burlingame to have filed a fee application in the first instance lacking sufficient specificity.

**(7) Fees and Costs Billed by the Pachulski Firm**

The Koellings contend that Burlingame has failed to pay the Pachulski Firm for the work performed in this bankruptcy case. Therefore, Burlingame should not be permitted to include these fees and costs in its unsecured claim. As evidence of Burlingame's failure to pay, the Koellings submit the Declaration of Chris D. Kuhner, to which is attached a copy of a complaint filed by the Pachulski Firm in San Francisco Superior Court, seeking payment of its fees and costs in the amount of $232,631.29.

In its reply, Burlingame notes that, as with other categories of fees and costs, after reducing the total incurred by 43 percent, it is only seeking to recover from the Koellings $132,600, not $232,631. Burlingame concedes that it has a fee dispute with the Pachulski Firm. However, it contends that this should not prevent the Court from allowing its request for allowance of the fees as part of its claim. However, Burlingame proposes that this amount be reserved until the fee dispute has been resolved. The Court agrees that this would be appropriate.

**CONCLUSION**

Burlingame's motion for permission to include its post-petition fees and costs in its unsecured claim against the Koelling estate is granted and Burlingame's objections are overruled except as set forth below:

14

(1) The Koellings' objection to the fees and costs incurred in connection with Burlingame's failed attempt to call Steven Cowan as an expert witness is sustained, and these fees are disallowed.

(2) The Koellings' objection to the fees related to the testimony of David Ferree as unnecessary is sustained, and these fees are disallowed.

(3) The issue of whether the fees and costs billed by the Pachulski Firm should be disallowed is reserved for later determination, after Burlingame's dispute with the Pachulski Firm with respect to the fees and costs has been resolved.

Burlingame is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

COURT SERVICE LIST

Paul E. Manasian
Manasian & Rougeau, LLP
400 Montgomery St., Ste. 1000
San Francisco, CA 94104

Robert R. Moore
Allen Matkins Leck Gamble & Mallory LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111

Philip J. Nicholsen
Law Offices of Philip J. Nicholsen
221 Main St., #740
San Francisco, CA 94105